IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA

V.                                              NO: 4:09CR00295

KELLY DEAN SHRUM
d/b/a ARKANSAS CENTER
FOR WOMEN

**ORDER**

Pending is Defendant's motion for a new trial. (Docket # 73). The government has filed a response and the Defendant has filed a reply. For the reasons stated on the record in the hearing held March 11, 2011 and herein, Defendant's motion is DENIED.

Under Rule 33, the court may "grant a new trial if the interest of justice so requires." The district court has broad, but limited, discretion to grant or deny a motion for a new trial based on the sufficiency of the evidence, and "it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir.2002) (internal quotation omitted). When considering the motion, the court need not view the evidence most favorably to the verdict, but must weigh the evidence and evaluate the credibility of the witnesses. *United States v. Collier*, 527 F.3d 695, 701 (8th Cir.2008). Motions for new trial based on the sufficiency of the evidence are generally disfavored, however, and "[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Campos*, 306 F.3d at 579.

Following an eleven day jury trial, the Defendant was convicted of Misbranding, a lesser included offense, and Health Care Fraud. Defendant argues that a new trial is required in the

interest of justice because (1) prejudicial, unauthenticated hearsay evidence was improperly admitted; (2) certain defense witnesses were improperly excluded; (3) the proof did not conform with the indictment and the jury instructions did not conform to the statutory requirements; (4) prejudicial evidence was admitted regarding the purpose of the FDA and the FDA's approval process; (5) the government misstated the evidence during closing arguments, and (6) evidence of the Defendant's finances was improperly admitted.

    1.    Archive.org evidence.

The Defendant argues that he was prejudiced by the admission of hearsay evidence from www.archive.org.  These records were originally admitted through the testimony of FDA Office of Criminal Investigations Special Agent Lee Roediger.  Agent Roediger testified that as part of his investigation of the purported Canadian internet pharmacies from which the Defendant ordered IUD's, he used a tool known as archive.org.  This tool allegedly enabled the agent to obtain a screen-shot depicting a pharmacy web-site as it appeared on a specific date in the past.  The Court admitted the testimony and images of the pharmacy web-site which depicted a statement at the bottom of the image noting that the FDA did not approve of purchases from this web-site.  The following trial day[1], the Court reconsidered its ruling, withdrew these documents from the jury's consideration and instructed the jury to disregard the evidence.  "It is presumed that a jury will follow a curative instruction unless there is 'an overwhelming probability' that it was unable to do so." *United States v. Uphoff*, 232 F.3d 624, 626 (8th Cir. 2000) quoting *Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987).

---

[1] The evidence was admitted on Friday, November 5, 2010 and was withdrawn on Monday, November 8, 2010.

Following the Court's instruction directing the jury to disregard the evidence, the Defendant conducted its cross examination of Agent Roediger. During that examination, counsel for the Defendant offered a consensual recording made in the presence of Agent Roediger to one of the purported Canadian internet pharmacies in which the undercover agent specifically inquired about the "banner on the website," the exact evidence to which Defendant objected and which the Court struck from the record. Additionally, on re-direct the government questioned Agent Roediger about the banner and the Defendant did not object.

Defendant argues that these documents were "one of a few, if not the only, evidence indicating that the drugs were not FDA approved because they were ordered from outside the United States" and the Court's curative instruction was insufficient to remove the prejudice to the Defendant. The Court disagrees. There is no evidence that the jury would have failed to follow the Court's curative instruction and disregard the evidence. Further, the Defendant re-introduced the evidence about which he objects following the instruction. Finally, other evidence was introduced which established that the products used by the Defendant were not FDA-approved products. Specifically, Dr. Charles Lee, a medical officer in the division of New Drugs and Labeling Compliance with the Food and Drug Administration testified that the drug products used by the Defendant were not an FDA-approved product. Accordingly, the Court denies the Defendant's motion for a new trial based on the admission of the archive.org evidence.

(2) Defense witnesses.

Defendant argues that the Court erred in excluding the testimony of defense counsel's investigator and outside counsel for Bayer Healthcare Pharmaceuticals violating his constitutional right to present a complete defense. During the Defendant's case, the Defendant

3

advised the Court of his intent to call Matilda Buchanan, an investigator and Brad Robertson, an attorney for Bayer to testify. These witnesses were offered to address quality control issues raised by government witness, Russell Barrons.

Mr. Barrons was employed by Bayer from 1999 to 2010. At the time he left Bayer, he was serving as the Director of Marketing for Mirena®, the IUD at issue in this case. At the time of trial, Mr. Barrons worked for Bayer as a consultant. During Mr. Barrons' trial testimony, he was questioned about the quality control of the Mirena® product. He testified, based on his personal knowledge, that the FDA required and approved a specific line dedicated to the production of the FDA-approved product at the manufacturing plant in Finland. No other product is produced on that line. He also testified about temperature controls in place during shipment and the traceability of the drug product from the production line to the end user. Defendant was afforded the opportunity to conduct a full and complete cross examination of Mr. Barrons and following his testimony the Court advised the witness that he was still under subpoena. Defendant was in no way precluded from challenging the testimony of Mr. Barrons through testimony or documentation.

Defendant represented to the Court that he intended to offer Mr. Brad Robertson, an attorney for Bayer, to question him regarding documents that were not produced in discovery. Specifically, the Defendant argues that "Bayer did not produce any document outlining the policy for shipping Mirena from Finland to the U.S. for distribution because Bayer did not possess the documents as it was not the entity responsible for the shipping of Mirenas from Finland." Mr. Robertson advised the Court that he believed that Bayer complied with the subpoena issued and stated that Bayer Healthcare Pharmaceuticals was not the appropriate entity from which to seek

the shipping information; Bayer Schering Pharma Oy, the organization that actually distributes the products, would be the appropriate source. The Court properly excluded the testimony of Bayer's outside counsel, Mr. Robertson. Defendant should have raised this discovery issue prior to trial. Mr. Robertson's testimony regarding Bayer's responses to discovery is wholly without relevance to the issues at trial. Moreover, the fact that Bayer failed to produce a document which it did not possess would be confusing to the jury. Mr. Robertson is not an employee of Bayer but is employed as outside counsel, he would not be able to testify to the regularly kept business records of the company or to personal knowledge of any company activity relating to Mirena.

Similarly, the Defendant represented that he would call Matilda Buchanan, an investigator to testify about documents she reviewed from Bayer Healthcare Pharmaceuticals. Ms. Buchanan has no personal knowledge of the regularly kept business records of Bayer or the company's activities in acquiring FDA approval of the Mirena IUD. Further, any testimony about the reasons certain documents were produced or not produced would be based on hearsay. Finally, as explained above, testimony regarding documents which were not produced by Bayer Healthcare would be confusing to the jury. The Court finds that the exclusion of testimony of Mr. Robertson and Ms. Buchanan was proper.

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," which includes the right to present testimony of witnesses that is material and favorable to their defense and complies with the rules of evidence. *See, Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986) (internal quotations omitted); *see also, United States v. Turning Bear*, 357 F.3d 730, 733 (8th Cir.2004). "The Sixth Amendment does not guarantee, however, that criminal defendants may call every witness they choose." *Richardson v. Bowersox*, 188 F.3d 973,

980 (8th Cir.1999), *cert. denied*, 529 U.S. 1113 (2000).  "In the context of evidentiary exclusions, a defendant's Sixth Amendment rights are only violated 'where the trial court excludes relevant evidence without sufficient justification.'" *United States v. Hyles,* 479 F.3d 958, 970 (8th Cir. 2007).  The Court finds that the exclusion of these witnesses was proper and Defendant's constitutional right to present a defense was not violated.

      (3) Proof and Jury Instructions.

The Defendant argues that the jury instructions, the government's arguments and the indictment failed to accurately state the offenses charged and failed to provide adequate notice to the Defendant.  Count One of the Superceding Indictment charged the Defendant with Misbranding, a violation of Title 21, United States Code, Section 331(a), 333(a)(2), 352(c) and 352(f)(1).  Specifically, the Superceding Indictment charges that the Defendant, with the intent to defraud and mislead, caused misbranded drugs to be introduced into interstate commerce.  The Indictment alleges that the drugs were misbranded in one of the following ways: (1) within the meaning of 21 U.S.C. §352(c), in that the label or labeling was not in such terms as to render them likely to be read and understood by the ordinary individual under customary conditions of purchase and use in that the labeling was not in the English language; and (2) within the meaning of 21 U.S.C. §352(f)(1), in that their labeling failed to bear adequate directions for use.

In a special verdict form, the jury found that the Defendant caused the drugs to be introduced into interstate commerce and that the drugs were misbranded within the meanings of Sections 352(c) and 352(f)(1).  The jury convicted the Defendant of Misbranding, a lesser-included offense, a misdemeanor which did not require the jury to find that the Defendant had the intent to defraud or mislead when violating 21 U.S.C. §331.

The Court's jury instructions defined misbranding as follows in Instruction number 15: "A drug is misbranded if any word, statement or other information required by or under authority of the Food, Drug and Cosmetic Act to appear on the label or labeling is not in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use." The Court finds this instruction to be an accurate statement of the law. *See,* 21 U.S.C. §352(c)(stating that a drug or device is misbranded "if any word, statement, or other information required by or under authority of this chapter to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use). The Court omitted only the statement relating to conspicuousness about which there was no issue at trial.

Defendant argues that the jury was not adequately instructed regarding the words, statements or other information which was required by the FDA to be placed on the label of the drug product. Dr. Charles Lee testified to the approved labeling for the product at issue and the requirements for labeling including the description, clinical pharmacology, indication and usages and warnings. Over the government's objection and in accordance with the Defendant's argument, the Court did not instruct the jury on the Code of Federal Regulations, finding that to instruct the jury on the regulations would be confusing as these regulations do not have the force and effect of criminal statutes. The Court allowed the parties to argue the regulations in closing arguments to support their theories of the case, permitting the jury to determine based on the evidence at trial, whether "any word, statement, or other information required by or under

authority of [the Act] to appear on the label or labeling [was] prominently placed thereon . . . in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use." 21 U.S.C. §352(c). The Court finds that the jury was properly instructed and taken as a whole, the jury instructions adequately advised the jury of the offenses charged and the burden of proof required of the government. *United States v. Rice*, 449 F.3d 887, 895 (8th Cir.), *cert. denied*, 549 U.S. 1040 (2006).

The Superceding Indictment also charged that the drugs were misbranded within the meaning of 21 U.S.C. §352(f)(1), in that their labeling failed to bear adequate directions for use. Jury Instruction Number 16 stated: "A drug is misbranded if its labeling fails to bear adequate directions for use." This is an accurate statement of the law. *See,* 21 U.S.C. §352(f)(1)(stating that a drug or device is misbranded "[u]nless its labeling bears (1) adequate directions for use. . . ." ).

The government presented testimony and argument that the drug product used by the Defendant was a prescription drug that lacked adequate directions for use for either physicians or laymen. Under the statutory scheme prescription drugs are per se misbranded. *See, Evers v. United States,* 643 F.2d 1043, 1051 (5th Cir. 1981)("since a prescription drug by definition can be used only under a physician's supervision . . . it is impossible to provide 'adequate directions for use' to a layman."). The government's witnesses established that prescription drugs can be exempt from the "adequate directions for use" requirement if the label bears the statement "Rx only." Because the label of the drug product at issue did not bear this symbol, the government argued that it failed to meet the exemption and was misbranded. Consistent with the Defendant's arguments at trial, the Court did not instruct the jury regarding the regulations. The Court

allowed the parties to present argument in accordance with the evidence produced at trial. The Court finds that the jury was properly instructed and sufficient evidence existed to support the jury's findings.

The Superceding Indictment charges that the Defendant committed the crime of health care fraud as follows:

> 1. The United States incorporates by reference herein introductory paragraphs A1 through A10 from Count One above.
> 2. At all times material to this Indictment, the Arkansas Medicaid Program was a joint federal and state program that reimbursed for necessary medical services to eligible persons who were not able to pay for such services. The federal government funded a portion of the Medicaid money and the State provided the balance of the funds. The Arkansas Medicaid Program was a health care benefit program as defined by Title 18, United States Code, Section 24.
> 3. Arkansas Center for Women, Ltd. was registered as a clinic with the Arkansas Medicaid Program under provider number 136831004. SHRUM was listed as the only physician affiliated with that clinic. SHRUM signed the Medicaid provider contract on behalf of the Arkansas Center for Women, Ltd., 1609 West 40th, Suite 203, Pine Bluff, AR 71603.
> 4. Shrum submitted claims to the Arkansas Medicaid Program under this clinic provider number, for procedure code J7302, Levonorgestrel Releasing Intrauterine Contraceptive (Mirena). This procedure code is specific to Bayer's FDA-approved Mirena product. Other IUDs have their own unique procedure codes. Any item billed under the J7302 procedure code must be the FDA-approved version of Bayer's Mirena.
> 5. A claim for reimbursement to the Arkansas Medicaid Program requires the submission of the drug's valid National Drug Code ("NDC") number. The unique NDC number for FDA-approved Mirena is 50419-421-01.
>
> B. Scheme to Defraud
>
> From on or about January 15, 2008 through on or about June 12, 2009, SHRUM caused to be submitted claims for reimbursement from the Arkansas Medicaid Program, which included false representations. Specifically, SHRUM billed the Arkansas Medicaid Program as if he was administering the FDA-approved version of Mirena, when he was actually administering a non-FDA approved IUD.
>
> C. Health Care Fraud Charge
>
> From on or about January 15, 2008 through June 12, 2009, in the Eastern District of

Arkansas and elsewhere, KELLY DEAN SHRUM, D.O knowingly and willfully caused to be executed and attempted to cause to be executed a scheme and artifice to defraud the Arkansas Medicaid Program, a health care benefit program, and to obtain by means of fraudulent pretenses and representations any of the money under the custody and control of the Arkansas Medicaid Program, a health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services.

All in violation of Title 18, United States Code, Sections 1347 and 2.

In accordance with the charges in the Superceding Indictment, the government presented evidence at trial that the Defendant was administering the non-FDA approved drug product but billing Medicaid for the FDA-approved Mirena. The government presented evidence that the Defendant used the same procedure code required for the FDA-approved Mirena and on the advice of Dr. Law's office, used an NDC code unique to the FDA-approved Mirena. The Defendant had adequate notice of the charges filed, the governments arguments and evidence were consistent with the charges and the jury was adequately and properly instructed.

(4) The purpose of the FDA and the FDA's approval process.

The Defendant argues that the government's introduction of evidence relating to the purpose of the FDA and the FDA's approval process was improper. Count One of the Superceding Indictment charged the Defendant with felony misbranding, requiring the government to prove that the defendant acted with the intent to defraud or mislead. In relation to this charge, the Defendant requested a Bill of Particulars identifying the victim(s) who he allegedly intended to defraud or mislead. The government identified three alleged victims, the Arkansas Medicaid Program, the Defendant's patients and the FDA. Further, the Introductory Paragraphs of the Superceding Indictment stated:

5. The FDA is the federal agency within the United States Department of Health

and Human Services charged with the responsibility for protecting the health and safety of the American public by enforcing the Federal Food, Drug and Cosmetic Act ("FD&C Act"), 21 U.S.C. § 301 et seq. One of the purposes of the FD&C Act is to ensure that all drugs sold for consumption by or administration to humans bear labeling containing only true and accurate information. The FDA's responsibilities under the FD&C Act include regulating the manufacture, labeling, and distribution of all drugs and drug components shipped or received in interstate commerce.

The governments proof was consistent with the charges in the Superceding Indictment. Because evidence of the Defendant's intent to defraud or mislead was a required element of the government's case, the Court finds that the testimony and argument regarding the FDA, the FDA's approval process and the alleged fraud on the patients was relevant and was not prejudicial.

   (5) The government's closing argument.

The Defendant argues that the government's improper comments and inaccurate statements in closing arguments substantially impaired his right to a fair trial.  "To obtain a reversal for prosecutorial misconduct, the defendant must show that (1) the prosecutor's remarks were improper, and (2) such remarks prejudiced the defendant's rights in obtaining a fair trial." *United States v. King*, 36 F.3d 728, 733 (8th Cir.1994), *cert. denied*, 513 U.S. 1135 (1995). Having reviewed the record, the Court finds that the comments about which Defendant objects were neither improper nor did they prejudice the Defendant's rights in obtaining a fair trial.

(6) Evidence of the Defendant's finances.

Defendant argues that the evidence of his finances was irrelevant and was intended to appeal to class prejudice.  The Defendant notified the government prior to trial of his intent to call Jay Marsh, an expert economist at trial.  Mr. Marsh opined that the Defendant would have

11

lost money for the time period of December 31, 2007 to June 11, 2009 by purchasing the FDA-approved Mirena. The Defendant testified to the difference in price of the foreign IUD's and the Mirena and explained that he bought the foreign product because of the price difference. The government introduced evidence that the Defendant was profitable in his business and profited from the fraud. The Court finds that evidence of the Defendant's personal financial condition was relevant. Further, the Court finds no evidence to suggest that the government introduced the evidence to appeal to class prejudice.

Wherefore, Defendant's motion for a new trial is DENIED.

IT IS SO ORDERED this 9th day of May, 2011.

*James M. Moody*
James M. Moody
United States District Judge